IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      **Plaintiff,**

      v.                                      COMPLAINT

**ABRAHAM CHEVROLET-MIAMI, INC.,**      JURY TRIAL DEMANDED
**D/B/A AUTONATION CHEVROLET CORAL
GABLES, AND AUTONATION, INC.**

      **Defendants.**
_____/

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, Title I of the Civil Rights Act of 1991, and 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Charging Party Jacqueline de la Torre (the "Charging Party"). Specifically, Plaintiff United States Equal Employment Opportunity Commission (the "EEOC") alleges that Defendants Abraham Chevrolet-Miami, Inc., doing business as "AutoNation Chevrolet Coral Gables," and AutoNation, Inc. (collectively referred to as the "Defendants" or "AutoNation"), failed to promote Charging Party to the position of Parts Manager because of her sex (female).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

1

Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, and 42 U.S.C. § 2000e-5(f)(1).

4. Defendants are affiliated entities related to the operation, ownership, and management of the dealership, AutoNation Chevrolet Coral Gables, where Charging Party was employed.

5. At all relevant times, the Defendants have continuously been doing business in the State of Florida and have each continuously had at least fifteen employees.

6. Abraham Chevrolet-Miami, Inc. is a foreign for-profit corporation, incorporated in the State of Delaware and authorized to do business in the State of Florida, that at all times material to the complaint has conducted business, directly and indirectly, in the State of Florida.

7. Abraham Chevrolet-Miami, Inc. is the owner of the fictitious name "AutoNation Chevrolet Coral Gables."

8. Abraham Chevrolet-Miami, Inc. has its principal address as 4181 S.W. 8th Street, Miami, Florida 33134, where AutoNation Chevrolet Coral Gables does business.

9. Both Abraham Chevrolet-Miami, Inc. and AutoNation, Inc. identify their mailing addresses as 200 S.W. 1st Avenue, 14th Floor, Fort Lauderdale, Florida 33301.

10. AutoNation, Inc. is a foreign for-profit corporation incorporated in the State of Delaware and authorized to do business in the State of Florida that, at all times material to the complaint, has conducted business, directly and indirectly, in the State of Florida, at its principal place of business located at 200 S.W. 1st Avenue, 14th Floor, Fort Lauderdale, Florida 33301.

11. Defendants operate as an integrated enterprise or single employer by virtue of their common management, the interrelations of their operations, the interrelations of their finances, the centralized control over their labor relations, and their common ownership.

12. Defendants are in control of the fundamental aspects of the employment relationship that gave rise to the violations of Title VII stated herein.

13. Defendants had the power to hire, fire, promote, or modify the terms and conditions of the Charging Party's employment.

14. At all relevant times, Defendants have continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## CONDITIONS PRECEDENT

15. More than thirty days prior to the institution of this lawsuit, Charging Party Jacqueline de la Torre, filed an administrative charge of discrimination with the Commission alleging violations of Title VII by the Defendants and the Commission issued its Letter of Determination as to her charge, finding reasonable cause to believe the discrimination alleged occurred.

16. Prior to initiating this lawsuit, the EEOC's representatives attempted to correct the unlawful employment practices alleged herein through informal methods of conciliation, conference, and persuasion to remedy the discriminatory practices and provide appropriate relief.

17. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

18. Defendants are a nationwide auto dealer selling new and used cars, selling car parts, and servicing automobiles.

19. Defendants generally organize its dealerships into districts and regions.

20. At all times relevant to the Complaint, Defendants have owned and operated the AutoNation Chevrolet Coral Gables car dealership (hereinafter referred to as the "Dealership") located at 4181 S.W. 8th Street, Miami, Florida 33134.

21. Charging Party, Jacqueline de la Torre, worked at the Dealership from approximately 1996 until August 2013.

22. The Charging Party successfully performed several different jobs during her employment at the Dealership.

23. The Charging Party held the position of Assistant Parts Manager for approximately the last ten years of her employment.

24. The Charging Party worked as the Assistant Parts Manager at the time her employment ended in August 2013.

25. The Charging Party had managerial responsibilities as the Assistant Parts Manager, which included such job duties as supervising more than ten employees.

26. As Assistant Parts Manager, the Charging Party was also responsible for managing all Parts Department functions, including customer service, shipping, sales, accounting, parts inventory, finance, factory sales and returns, conciliations, staffing issues, and monthly reports.

27. Charging Party is highly knowledgeable and experienced in all facets of car dealership operations within a large volume Parts Department.

28. While working as the Assistant Parts Manager, Charging Party often performed the job duties of the Parts Manager.

29. In her capacity as Assistant Parts Manager, the Charging Party reported to the Parts Manager, Juan Huerta.

30. Mr. Huerta reported to Raul Gandarillas, the General Manager.

31. In the summer of 2013, Juan Huerta's job position changed from Parts Manager to Wholesale Parts Director.

32. As a result, in the summer of 2013, the position of Parts Manager became vacant.

33. At the time the Parts Manager position became vacant and Defendants sought to fill it, Charging Party had been successfully performing the position of Assistant Parts Manager for approximately ten years.

34. When the Parts Manager position became vacant in the summer of 2013, the Defendants did not announce or post the open Parts Manager position internally within the company or advertise its existence.

35. When the Parts Manager position became vacant in the summer of 2013, the Defendants did not announce or post the open Parts Manager position externally to the public or advertise its existence.

36. The Defendants did not conduct a formal hiring process to fill the vacant Parts Manager position.

37. The Defendants did not require interested candidates to submit applications.

38. The Defendants did not conduct a formal interview process for the Parts Manager position.

39. Throughout her time working as the Assistant Parts Manager, the Charging Party expressed her interest in working as the Parts Manager to Defendants' management.

40. The Defendants did not consider Charging Party for the Parts Manager position.

41. The Defendants did not interview Charging Party for the Parts Manager position.

42. The Defendants did not provide Charging Party the opportunity to apply, or submit an application or resume for the Parts Manager position.

43. During a company meeting in August 2013, Defendants' management announced to the employees working at the Dealership that Jason Armas, a male, would be promoted to the Parts Manager position.

44. Defendants required Charging Party to train Jason Armas on how to do his new job as Parts Manager.

45. Before his promotion to Parts Manager, Jason Armas worked as a Sales Associate.

46. Jason Armas never held the position of Assistant Parts Manager.

47. Jason Armas was handpicked by General Manager, Raul Gandarillas, for the Parts Manager position.

48. Charging Party complained to the district and regional management about Defendants' failure to provide her an opportunity to submit an application or a resume for the Parts Manager position.

49. Charging Party was told by Defendants' management that the Defendants "needed a man" for the position.

50. Defendants' management acknowledged that Charging Party was the most qualified candidate for the Parts Manager position, but advised that "it was too late to undo things."

51. Charging Party also complained to human resources about not being considered for the Parts Manager position.

52. After Charging Party trained Jason Armas, Raul Gandarillas began to verbally harass her, including:

   a. expressing to Dealership employees that he wanted Charging Party to leave the dealership; and

   b. referring to Charging Party as only clerical despite her years of experience.

53. Charging Party was forced to resign from her employment with the Defendants on August 17, 2013.

## STATEMENT OF CLAIMS

54. Paragraphs 18 - 53 are incorporated herein.

55. At all times relevant to the Complaint, Defendants engaged in unlawful employment practices in violation of Section 703 of Title VII, 42 U.S.C. 2000e-2 by failing to promote Charging Party on the basis of her sex (female).

56. The unlawful practices complained of in paragraphs 18 - 53 were intentional and caused Charging Party to suffer emotional distress including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or physical damages.

57. The unlawful employment practices, complained of in paragraphs 18 - 53 above, were intentional and were done with malice or with reckless indifference to the federally protected rights of the Charging Party.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from making employment decisions (including hiring, firing, and promoting) on the basis of sex and gender;

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for female employees, and which eradicate the effects of its past and present unlawful employment practices;

C. Order Defendants to make whole Charging Party, Jacqueline de la Torre, who was not promoted on the basis of her sex (female) by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of these unlawful employment practices including, but not limited to, reinstatement or front pay in lieu thereof;

D. Order Defendants to make whole Charging Party, Jacqueline de la Torre, who Defendants failed to promote on the basis of her sex (female) by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in

paragraphs 18-53 above including, but not limited to, relocation expenses, job search expenses, medical expenses, penalties for defaulting on loans, moving expenses and the like, in amounts to be determined at trial;

E.     Order Defendants to make whole Charging Party, Jacqueline de la Torre, who Defendants failed to promote on the basis of her sex (female) by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 18-53 above including, but not limited to, emotional and/or physical pain, suffering and mental anguish, humiliation, and loss of enjoyment of life, and the like, in amounts to be determined at trial;

F.     Order Defendants to pay Charging Party, Jacqueline de la Torre, punitive damages for Defendants' malicious and reckless conduct, as described in paragraphs 18-53 above, in amounts to be determined at trial;

G.     Grant such further relief as the Court deems necessary and proper in the public interest; and

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

JAMES L. LEE
Deputy General Counsel
GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
131 M Street, N.E.
Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney

KIMBERLY A. CRUZ
Supervisory Trial Attorney

s/ Carmen Manrara Cartaya
CARMEN MANRARA CARTAYA
Trial Attorney
Florida Bar No. 0073887
Tel: 305-808-1786
Fax: 305-808-1835
Carmen.Cartaya@eeoc.gov
U.S. Equal Employment Opportunity Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131

*Attorneys for Plaintiff*